369 So.2d 427 (1979)
John UPLEDGER and Diane Upledger, His Wife, Appellants,
v.
VILANOR INCORPORATED, a Florida Corporation, Victor Kingdon and Larry Williams, Appellees.
No. 78-156.
District Court of Appeal of Florida, Second District.
April 4, 1979.
*428 Wayne J. Boyer, of Wayne J. Boyer, P.A., Clearwater, for appellants.
N.S. Gould, of Phillips, McFarland, Gould, Wilhelm & Wagstaff, P.A., Clearwater, for appellees.
GRIMES, Chief Judge.
This case involves the extent to which a person may rely upon a misrepresentation of fact without verifying its accuracy.
The appellants (purchasers) bought an apartment building from appellees (sellers). Later, the purchasers sued the sellers for damages, contending that the sellers had knowingly made certain false representations to them with respect to the building. The purchasers alleged that they relied upon these misrepresentations and that had the truth been known to them they would not have gone through with the purchase. The sellers obtained a summary judgment.
The purchasers' evidence indicated that the sellers had told them that certain of the apartments rented for specific amounts when, in fact, the rentals being collected from these apartments were substantially less. The purchasers further stated that the sellers advised them that the durations of the apartment leases were longer than they turned out to be. The sellers denied these assertions, but, because this appeal stems from a summary judgment, we must assume them to be true. The purchasers admitted that they had failed to check the accuracy of the alleged misrepresentations. The court ruled against the purchasers on the authority of Potakar v. Hurtak, 82 So.2d 502 (Fla. 1955), and Folz v. Beard, 332 So.2d 129 (Fla. 2d DCA 1976).
In Potakar, the amended complaint alleged that in the course of entering into a lease of a restaurant facility the defendant/lessor falsely stated that the previous lessee had made a profit. In fact, the restaurant had lost money for several years. The plaintiff/lessee alleged that he relied upon the statement in deciding to lease the premises and that he suffered damages by virtue of the fact that the business was not profitable and had never been profitable. In affirming the dismissal of the amended complaint, the supreme court discussed  and seemed to cite with approval  the following statement from 23 Am.Jur. Fraud and Deceit § 155 (19__):
"A rule which has been approved, and which combines those elements of both the objective and subjective tests which have been stated by the courts enunciating them to be desirable, is that in measuring the right to rely upon representations, every person must use reasonable diligence for his own protection. Under any standard of conduct, and in the absence of accompanying actual deception, artifice, or misconduct, it is well agreed that where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations. * * *"
Potakar v. Hurtak, supra at 504. The court held that the amended complaint did not allege facts which met the foregoing test.
*429 Folz v. Beard, supra, involved a suit to rescind the sale of an employment agency on the basis of fraudulent misrepresentations. In reversing the judgment of rescission because of an erroneous jury instruction, this court said:
We think the charge is ambiguous, misleading, obviously incomplete and improperly states the applicable law. It is the rule in Florida that in the absence of a fiduciary relationship, or of actionable fraud inducing the representee to forbear investigation, or of circumstances making an investigation impossible, difficult, or expensive (none of which circumstances is established here), the representee is under a duty to exercise reasonable diligence for his own protection. Thus in the absence of accompanying undiscoverable deception, artifice, or misconduct, where the means of knowledge are at hand and are equally available to both parties and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other's misrepresentations.
Folz, 332 So.2d at 130.
While acknowledging that these decisions lend support to the sellers' position, the purchasers refer to several other cases which appear to be equally persuasive toward the purchasers' view. Of particular significance is Board of Public Instruction v. Everett W. Martin & Son, Inc., 97 So.2d 21 (Fla. 1957). In that case a contractor misrepresented to the school board the amount of money it had paid for substituted jalousies incorporated into a construction job in order to obtain a higher payment. The school board admitted that it had made no independent investigation of the amount which the contractor had actually paid for the jalousies. While the issue on appeal involved the giving of a challenged jury instruction and the refusal to give another, the court observed that the basic question of law in the case was whether a party may defend itself from a claim founded upon a fraudulent misrepresentation of fact by showing that the deceived party should have made an independent investigation to ascertain the truth or falsity of the representor's statements. In reversing a judgment for the contractor the court held:
We are of the opinion that in this case, it was not the duty of the Board's architects to investigate the cost of the substituted material purchased by the contractor... .
We believe that the Board and its agents, the architects, were justified in accepting the representation of the contractor that he paid a certain sum for the substituted jalousies without having to go to the company which sold the jalousies to the contractor to determine the price actually paid by the contractor.
Board of Public Instruction v. Everett W. Martin & Son, Inc., supra at 27.
A similar principle was announced in Martin v. Paskow, 339 So.2d 266, 267 (Fla. 3d DCA 1976). In affirming the rescission of the purchase of an apartment building for fraudulent misrepresentations, the court said:
Where the record shows that positive representations are made for the purpose of inducing a plaintiff to act to his detriment, the defendant cannot complain that the plaintiff did, in fact, rely upon the representations made.
See also Alepgo Corp. v. Pozin, 114 So.2d 645 (Fla. 3d DCA 1959).
Because the two lines of authority are difficult to reconcile, it may be beneficial to consider what others have said on the subject. After first explaining that misrepresentations of opinion and of law are not actionable, 12 Williston on Contracts § 1515B (3d ed. 1970) states:
The growing trend and tendency of the courts will continue to move toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy. Especially where there is a relation of natural trust and confidence, although not strictly a fiduciary relation, the failure of the defrauded party to exercise ordinary prudence or vigilance will not deprive him of redress.

*430 And so it is where one party has peculiar or superior knowledge of the facts which enhance the reliability of his statements. Nor does the fact that the representation concerns a matter of public record exonerate the defrauder from liability.
Section 540 of the Restatement (Second) of Torts (1976) provides:
§ 540. Duty to Investigate
The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.
Comment:
a. The rule stated in this Section applies not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense. Thus it is no defense to one who has made a fraudulent statement about his financial position that his offer to submit his books to examination is rejected. On the other hand, if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious under the rule stated in § 541.
37 Am.Jur.2d Fraud and Deceit § 250 (1968) states:
§ 250.  Actual or active fraud; wilful misrepresentation.
In consideration of the effect of negligence of a representee on the right to rely, the policy of the law toward actual fraud must always be considered, since, under modern judicial concepts of social relationship, the actual wrongdoing of the representor is considered to outweigh the carelessness of the representee, at least in instances of actual machination and deception. It has frequently been stated or held that the doctrine of negligence does not authorize deception in what is said or unsaid, and hence, the effect of negligence on the part of the party deceived may be tolled by the active fraud of the other party. In other words, the rule sanctioned by most of the courts is that where one party to a transaction induces the other party to enter into it by wilful misrepresentation, he cannot escape liability for his fraud by showing that such party could have investigated the representations made and would then have found that they were untrue. According to this view, negligence in trusting a representation will not excuse a positive wilful fraud, and contributory negligence is generally held not to be a defense to deliberate, active, or wilful fraud.
Obviously, each case must be decided upon its own peculiar circumstances. On the one hand, if the alleged misrepresentation of fact is more in the nature of "puffing," is patently incredible, or is obviously false, the complaining party should not be entitled to rely upon it. On the other hand, when a specific false statement is knowingly made and reasonably relied upon, we choose to align ourselves with the growing body of authorities which holds that the representee is not precluded from recovery simply because he failed to make an independent investigation of the veracity of the statement. This position is justified by either the desire to upgrade business morality or by the pragmatic view that, as between the two, a negligent party ought to prevail over a fraudulent party. Except when one should know better, it is anomalous to penalize a person for trusting what another says. A person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of caveat emptor.
In the instant case, the sellers, as owners of the building, had superior knowledge of the apartment rents and the terms of the leases. The purchasers had no reason to believe that the representations might be false. Therefore, it cannot be said, as a matter of law, that the purchasers must be denied recovery for failure to ascertain from the current tenants the rent they actually paid or to examine any leases which the sellers might proffer in order to verify their duration.
*431 We recognize that our opinion may conflict with Potakar v. Hurtak, 82 So.2d 502 (Fla. 1955), yet we are in harmony with the later case of Board of Public Instruction v. Everett W. Martin & Son, Inc., 97 So.2d 21 (Fla. 1957). Despite the fact that Martin quoted Potakar and did not question its reasoning, we believe that the Martin holding necessarily destroyed the precedential value of Potakar. We hereby recede from Folz v. Beard, 332 So.2d 129 (Fla. 2d DCA 1976), to the extent that anything said therein conflicts with this opinion.
REVERSED.
BOARDMAN and RYDER, JJ., concur.