The ESTATE OF Carey B. AYRES, By and Through Barry STRUGNELL as Executor De son tort, and Hazel Garrison, individually, and on behalf of a class of persons similarly situated, Plaintiffs,

v.

Donald C. BEAVER, a Florida Resident; Brian Center Management Corporation, a North Carolina corporation; Living Centers of America, Inc., a Delaware corporation; LCA Operational Holding Company, a Delaware corporation (f/k/a Living Centers Holding Company and Living Centers/Brian Care Company, a Delaware corporations), Defendants.

No. 98–2240–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

May 19, 1999.

Bennie Lazzara, Jr., James L. Wilkes, II, Mary J. Perry, Wilkes & McHugh, Tampa, FL, for plaintiffs.

David Christopher Banker, James B. Murphy, Jr., Shackleford, Farrior, Stallings, Tampa, FL, for Donald C. Beaver, defendant.

Charles Alvin Wachter, Edward Martin Waller, Jr., Elizabeth Ann Boland, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Paul G. Preston, Preston & Cowan, LLP, New Orleans, LA, for

Brian Center Corp., Brian Center Management Corp., Living Centers of America, Inc., LCA Operational Holding Co., defendants.

## ORDER ON PLAINTIFFS' MOTION TO REMAND CASE TO STATE CIRCUIT COURT

KOVACHEVICH, District Judge.

This is before the Court on Plaintiffs', Estate of Carey B. Ayres and Hazel Garrison, Motion to Remand Case to State Circuit Court, (Dkt.13), and Defendants', Donald C. Beaver, Brian Center Corporation, Brian Center Management Corporation, Living Centers of America, Inc., LCA Operational Holding Company, Response, (Dkt.22), and Memorandum in Opposition to Plaintiffs' Motion to Remand. (Dkt.21).

## I. FACTS

Plaintiffs, who are or were residents of Defendants' nursing homes, brought this action individually and on behalf of a class of individuals who are or were residents of Defendants' nursing homes. (Dkt.2).

Plaintiffs allege that Defendant Beaver sought and obtained, from the State of Florida and other states, licenses to operate forty-nine (49) nursing homes. (Dkt.2). Plaintiffs and all putative Class members [hereinafter Class members] were required to, as a condition of admission to the nursing homes, execute form contracts for their care, services, and supplies. (Dkt.2). By signing the Admission Contracts, Plaintiffs became obligated to pay, or guaranteed payment, for the care, services, and supplies provided by Defendants. (Dkt.2). Also pursuant to the Admission Contracts, Plaintiffs and each Class member were entitled to receive the level of care, services, and supplies required by the law of Florida and all other states where the nursing homes were located. (Dkt.2). Plaintiffs allege that because of the care, services, and supplies provided to Plaintiffs and Class members and because such nursing home residents were particularly vulnerable and dependent upon Defendants to provide their daily care and health needs, by operation of law, Defendants owed fiduciary duties to Plaintiffs and Class members. (Dkt.2).

Plaintiffs allege that Defendant Beaver developed a plan to maximize profitability of the nursing homes at the expense of Plaintiffs and Class members. (Dkt.2). Defendant Beaver's plan to maximize the profitability of the nursing homes caused the nursing homes to cut back on staffing, basic care, services, and supplies provided to Plaintiffs and Class members. (Dkt.2). Defendant Beaver caused the nursing homes to continue to charge the same or even higher prices although the care, services, and supplies charged for were not being adequately provided to Plaintiffs and Class members. (Dkt.2). As part of Defendant Beaver's profit maximization scheme, Defendant Beaver caused the nursing homes and those corporations that controlled the nursing homes to repeatedly breach the fiduciary duties owed to the nursing home residents, including Plaintiffs and Class members. (Dkt.2).

Plaintiffs also allege that Defendants committed civil conspiracy against Plaintiffs and Class members. (Dkt.2). Plaintiffs state that the conspiracy results from actual knowledge of, and acts taken to join in, the "scheme and conspiracy" to breach the fiduciary duties owed to Plaintiffs and Class members. (Dkt.2). The conspiracy was allegedly furthered by failing to notify the proper parties of its existence, by failing to provide care, services, and supplies as required, by falsely documenting care and services which were not provided, and by receiving payment for their participation in such conspiracy. (Dkt.2).

As to jurisdiction, Plaintiffs allege that Defendant Beaver is the sole shareholder, owner, director, and officer of a number of corporations, through which he owned, operated, controlled, and managed over forty-nine (49) nursing homes in the states of Florida, North Carolina, Georgia, Virginia, and South Carolina. (Dkt.2). Plaintiffs

also allege that Defendant Beaver controlled and directed the activities of all corporations having responsibility for the operation of the forty-nine (49) nursing homes and received all profits and benefits flowing therefrom. (Dkt.2). Plaintiffs assert that all of Defendant Beaver's corporations, used in the ownership, management, and operation of the forty-nine (49) nursing homes, were "mere shells" incorporated to insulate Defendant Beaver from his wrongful actions and were used as Defendant Beaver's "instrumentalities" to defraud creditors and to accomplish the wrongful acts alleged in the Complaint. (Dkt.2). Plaintiffs allege that Defendants have sufficient contacts with the State of Florida to subject Defendants to personal jurisdiction in the State of Florida, pursuant to § 48.193, Fla.Stat. (Dkt.2). The Complaint alleges that each of the claims asserted by Plaintiffs and Class members involves a dollar amount in excess of $15,-000.00, exclusive of costs and attorney's fees. (Dkt.2).

On November 2, 1998, Defendants filed a Notice of Removal to the United States District Court, Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1441, 1446. (Dkt.1) Defendants' Notice of Removal states, in part, that the cause of action was originally commenced in the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, Hillsborough County, that removal is timely, pursuant to 28 U.S.C. § 1446(b), and that removal is proper on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and federal diversity jurisdiction, 28 U.S.C. § 1332. (Dkt.1).

The Notice of Removal states that removal is warranted due to the presence of federal question jurisdiction, because Plaintiffs' claims arise under 42 U.S.C §§ 1395–96. (Dkt.1). Defendants, more specifically, state that, because 42 U.S.C. §§ 1395–96 establishes procedures for regulating virtually all aspects of care to Medicare or Medicaid beneficiaries, Plain-tiffs' claims arise under the federal Medicare and Medicaid statutes. (Dkt.1).

As to federal diversity jurisdiction, the Notice of Removal states that the controversy in this suit is between citizens of different states, even though Defendant Beaver is a resident of the State of Florida. (Dkt.1). Defendants claim that, even though, facially, diversity is not established, removal is warranted because Defendant Beaver was fraudulently joined by Plaintiffs. (Dkt.1). Defendants also assert that federal diversity jurisdiction is warranted because, along with complete diversity, Plaintiffs' claims, constituting the matter in controversy, exceed the sum or value of $75,000.00, exclusive of interest and costs. (Dkt.1).

## II. STANDARD OF REVIEW

Federal jurisdiction can be based on either: (1) a federal question or (2) diversity of citizenship and an amount in controversy exceeding $75,000.00. *See* 28 U.S.C. § 1331 (1993); 28 U.S.C. § 1332 (1993). A federal court determines whether or not jurisdiction exists by analyzing the allegations in the complaint. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 805, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Campos v. Sociedad Aeronautica De Medellín Consolidada, S.A.,* 882 F.Supp. 1056, 1057 (S.D.Fla.1994); *Woods v. Firestone Tire & Rubber Co.,* 560 F.Supp. 588, 590 (S.D.Fla.1983).

"The presence or absence of federal question jurisdiction is governed by the 'well pleaded complaint rule,' which provides that federal jurisdiction exists only when (a) federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In analyzing the complaint, the court must "determine whether a federal claim is 'necessarily presented by [the] plaintiff, even if [the] plaintiff has couched his pleadings exclusively in terms of state law.'" *Dean Witter Reynolds, Inc. v. Schwartz,* 550 F.Supp. 1312, 1313

(S.D.Fla.1982) (quoting *Schultz v. Coral Gables Fed. Sav. & Loan Ass'n*, 505 F.Supp. 1003, 1008 (S.D.Fla.1981)).

■ Diversity jurisdiction requires every plaintiff to be diverse from every defendant. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996). A lack of complete diversity precludes removal of a case to federal court. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1286 (11th Cir.1998). Once it is established that all parties are diverse from one another, it must be established that the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332 (1993).

■ "A federal district court must remand to the state court any case that was removed improvidently or without the necessary jurisdiction." *Campos*, 882 F.Supp. at 1057 (S.D.Fla.1994) (citing *Glaziers, Glass Workers, Etc. v. Florida Glass & Mirror*, 409 F.Supp. 225, 226 (M.D.Fla. 1976)). Removal jurisdiction is limited through strict construction of the removal statutes. *See Campos*, 882 F.Supp. at 1057. "Where there is any doubt concerning jurisdiction of the federal court on removal, the case should be remanded." *Woods*, 560 F.Supp. at 590 (S.D.Fla.1983).

### III. DISCUSSION

#### A. Federal Question Jurisdiction

Defendants assert that this Court has federal question jurisdiction over Plaintiffs' claims because Plaintiffs' claims arise under Title 42 U.S.C. § 1395, the Medicare Act, Title 42 U.S.C. § 1396, the Medicaid Act, and 42 C.F.R. § 483.1–483.75, the Omnibus Budget Reconciliation Act. (Dkt.22). Defendants further assert that this Court has federal question jurisdiction because Plaintiffs' claims are not "simply state law claims which indirectly involve violation of a federal standard." (Dkt.22).

Plaintiffs' Complaint asserts claims for breach of fiduciary duty and civil conspiracy, arising under state and common law. (Dkt.2). Plaintiffs' Complaint does not as-sert any claims, specifically arising under the Medicare, Medicaid, or Omnibus Budget Reconciliation Act. (Dkt.2).

■ A plaintiff is, necessarily, the "master of his complaint" and may choose either federal or state jurisdiction. *See Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425. However, a defendant may remove a civil case to a federal district court, pursuant to 28 U.S.C. § 1441. The burden of demonstrating that a district court has jurisdiction is on the defendant seeking removal. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989).

■ In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 805–09, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court held that in order to have federal question jurisdiction there must be the presence of a federal issue and a right of action to enforce it. "[A] private federal remedy for violating a federal statute is a prerequisite for finding federal question jurisdiction." *Smith v. Industrial Valley Title Ins. Co.*, 957 F.2d 90, 93 (3d Cir. 1992). The " 'vast majority' of cases for which original federal question jurisdiction exists 'are those in which federal law creates the cause of action.' " *See id.* (citing *Merrell Dow*, 478 U.S. at 807, 106 S.Ct. 3229). "The mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *See Merrell Dow*, 478 U.S. at 807, 106 S.Ct. 3229. "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *See California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

■ Congress has not, statutorily, provided any private federal right of action or remedy under the Medicare or Medicaid Acts. *See* 42 U.S.C. §§ 1395, 1396. Even if the Medicare and Medicaid Acts created some substantive rights, the statutes contain "numerous provisions short of judicial enforcement that are designed to redress recipients' grievances." *See Stewart v.*

*Bernstein,* 769 F.2d 1088, 1093 (5th Cir. 1985). Congress did not intend to provide a private right of action under the Medicare or Medicaid Acts and the mere presence of a federal issue, in this case, will not automatically confer federal question jurisdiction. *See Merrell Dow,* 478 U.S. at 807, 106 S.Ct. 3229.

Since Plaintiffs, who are the "masters of their complaint," have brought this action, alleging breach of fiduciary duty and civil conspiracy, under Florida law, this Court will remand the action to state court, unless other basis for removal exist. A state court can handle state law claims more efficiently and in accordance with state law. To the extent that Plaintiffs attempt to argue in the state forum for reimbursement of payments made pursuant to the Medicare and Medicaid contracts between the State and the Defendants, this Court is satisfied that Florida Statutes and case law will protect any federal interest. Medicaid is a joint federal-state program that provides medical assistance to qualified recipients. *See* 42 U.S.C. § 1396. In order to qualify for federal reimbursement, a state must "satisfy requirements regarding recipient eligibility, the scope of care and services provided, and provider certification, among other things, by means of an approved state plan for medical assistance." *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 693 (N.D.Ohio 1977). The implementation of the Medicaid program must be performed in accordance with federal enabling legislation and is the primary responsibility of the states that participate. *See id.*

"State courts are presumed competent to adjudicate matters before them." *Giannetti Brothers Construction Corp. v. Lee County,* 585 F.Supp. 1214, 1220 (M.D.Fla.1984). State courts are trusted to fairly abide and enforce the federal enabling legislation, and if they could not be trusted, a federal interest would arise. *See id.* A " 'general distrust' of state court competence should especially be discouraged in matters particularly within the state law realm." *See id.* Florida statutes and administrative regulations define Plaintiffs' rights under the Florida Medicaid program. *See generally,* Ch. 409.901–409.920 Fla.Stat. (1995). Accordingly, state court is the proper court to hear this matter.

### B. Federal Diversity Jurisdiction

Defendants also claim that removal is warranted because there is complete diversity among Plaintiffs and Defendants. (Dkt.1). Defendants claim removal is appropriate, even though Plaintiffs' Complaint asserts claims against Defendant Beaver, a Florida resident. (Dkt.1). Defendants assert that Defendant Beaver was impermissibly joined for the sole purpose of defeating federal jurisdiction. (Dkt.1).

Diversity jurisdiction requires every plaintiff to be diverse from every defendant. *See Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1355 (11th Cir.1996). A lack of complete diversity precludes removal of a case to federal court. *See Triggs,* 154 F.3d at 1286.

In the present action, all Plaintiffs and Defendant Beaver are residents of the State of Florida. (Dkt.2). Defendant, Brian Center Corporation, is a North Carolina corporation, Defendant, Brian Center Management Corporation, is a North Carolina corporation, Defendant, Living Centers of America, Inc., is a Delaware corporation, and Defendant, LCA Operational Holding Company, is a Delaware corporation. (Dkt.2). As Plaintiffs and Defendant Beaver reside in the State of Florida, on the face of the pleadings, there is a lack of complete diversity. (Dkt.2).

While, facially, there is a lack of complete diversity, this action may still be removed from state court to federal court on the basis of diversity jurisdiction, if Defendant Beaver, the non-diverse party, was fraudulently joined. *See id.* (citing *Tapscott,* 77 F.3d at 1359). Fraudulent joinder has been found in three (3) separate situations. *See Triggs,* 154 F.3d at

1287. The first situation is "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant". *See id.* (citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533, 1539 (11th Cir.1993)). The second situation is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *See Triggs,* 154 F.3d at 1287 (citing *Coker,* 709 F.2d at 1440). "[A] third situation of fraudulent joinder was identified-i.e., where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs,* 154 F.3d at 1287.

■ In the case at hand, Defendants assert that Plaintiffs fraudulently joined Defendant Beaver, under the previously discussed first situation, and assert that there is no possibility that Plaintiffs can prove a cause of action, for breach of fiduciary duty or civil conspiracy, against Defendant Beaver. (Dkt.22). However, "[i]f there is even a possibility that a state court would find that a complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *See Coker,* 709 F.2d at 1440–41. The standard does not require a plaintiff to have a winning case, it only requires the plaintiff to have a possibility of stating a valid cause of action. *See Triggs,* 154 F.3d at 1287. If the plaintiff has a possibility of stating a valid cause of action, the joinder of the non-diverse party is legitimate. *See id.*

In order to determine whether Plaintiffs have a possibility of stating a valid cause of action against Defendant Beaver, it is necessary to examine Florida law. Florida law addresses fiduciary duties by stating that:

Courts of equity have carefully refrained from defining instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal. The rule as thus stated has been repeatedly quoted with approval by this court. It has been said that it exists, and that relief is granted, in which influence has been acquired and abused-in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one [person] trusts in and relies upon another. The only question is, Does such a relation in fact exist?

*Swerhun v. General Motors Corp.,* 812 F.Supp. 1218, 1222–23 (M.D.Fla.1993); *see also Browning v. Peyton,* 918 F.2d 1516, 1522 (11th Cir.1990); *Garner v. Pearson,* 545 F.Supp. 549, 557 (M.D.Fla.1982) (quoting *Quinn v. Phipps,* 93 Fla. 805, 113 So. 419 (1927)). "Whether fiduciary duties were created between two parties is a question of fact." *Morton v. Young,* 311 So.2d 755, 756 (Fla. 3d DCA 1975); *see also Browning,* 918 F.2d at 1522; *Garner,* 545 F.Supp. at 557.

■ Since, under Florida law, the creation of a fiduciary duty is a question of fact, that can rest on relationships and duties of a non-legal nature, this Court finds that there is a possibility that Plaintiffs can prove a cause of action against the non-diverse Defendant Beaver.

As this Court has determined that there is a possibility that Plaintiffs can prove a cause of action against the non-diverse Defendant Beaver for breach of fiduciary

**1342**

duty, it is not necessary for the Court to address the possibility of proving a cause of action against Defendant Beaver for civil conspiracy. It is not necessary to show that every asserted claim against the non-diverse defendant is a possible cause of action. It is only necessary to show that a single cause of action has a possibility of being proven against the non-diverse defendant. As a possible cause of action exists against Defendant Beaver, this Court finds that Defendant Beaver was not fraudulently joined and the requirement of complete diversity for federal diversity jurisdiction has not been met.

Defendants also claim that Plaintiffs' Complaint alleges a sufficient amount in controversy that, when coupled with the alleged diversity of citizenship, gives this Court federal diversity jurisdiction. However, because this Court finds that Defendant Beaver was not fraudulently joined, and therefore complete diversity does not exist, this Court lacks federal diversity jurisdiction. Therefore, consideration of the alleged amounts in controversy is not necessary.

This Court lacks the necessary jurisdiction to hear this action and, therefore, must remand the case to a state court. This Court's remand in no way makes any determination of the viability of Plaintiffs' state law claims, nor does it purport to assign any estimation of standing to Plaintiffs' action. Accordingly it is

**ORDERED** that Plaintiffs' Motion to Remand Case to State Circuit Court, (Dkt.13), be **granted,** and the Court **remands** the case to the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida for all further proceedings. It is further **ORDERED** that all other pending motions be **denied** without prejudice to reassert upon remand.